*Law Offices of*
***BONNETT, FAIRBOURN,***
***FRIEDMAN & BALINT, P.C.***
*2325 E. Camelback Road, Suite 300*
*Phoenix, Arizona 85016*
*(602) 274-1100*
*Ty D. Frankel (AZ Bar No. 027179)*
*tfrankel@bffb.com*

*Law Offices of*
***BONNETT, FAIRBOURN,***
***FRIEDMAN & BALINT, P.C.***
*600 W. Broadway, Suite 900*
*San Diego, California 92101*
*Telephone: (619) 756-7748*
*Patricia N. Syverson (AZ Bar No. 020191)*
*psyverson@bffb.com*

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Gregory Mark Hanna, on behalf of himself and all those similarly situated,<br><br>Plaintiff,<br>v.<br><br>ComTrans, Inc., an Arizona Corporation, L. Neal Thomas and Jane Does Thomas, husband and wife; Cynthia Cross and John Doe Cross, wife and husband. | Case No. _____<br><br>**COLLECTIVE ACTION AND CLASS ACTION COMPLAINT**<br><br>**[JURY TRIAL DEMANDED]** |

Plaintiff Gregory Mark Hanna, individually and on behalf of all others similarly situated (hereinafter referred to as "Plaintiff") for his Complaint against ComTrans, Inc., L. Neal Thomas and Jane Does Thomas, and Cynthia Cross and John Doe Cross (collectively referred to as "ComTrans") alleges as follows:

## I. NATURE OF THE CASE

1. Plaintiff brings this action against ComTrans for its unlawful failure to pay overtime wages in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201-219

- 1 -

(hereinafter "FLSA") and its unlawful failure to pay wages due in violation of the Arizona Wage Statute, A.R.S. §§ 23-351-353, and 23-355.

2. This action is brought as a collective action pursuant to 29 U.S.C. § 216(b) to recover unpaid overtime compensation, liquidated damages, statutory penalties and damages owed to Plaintiff and all others similarly situated. This lawsuit is also brought as a class action under Federal Rule of Civil Procedure 23, to recover unpaid compensation and treble damages resulting from ComTrans' violations of the Arizona Wage Statute. For both collective and class action purposes, the proposed class consists of:

> All current and former ComTrans employees who worked as drivers for ComTrans during the Liability Period.

3. For at least three (3) years prior to the filing of this action (the "Liability Period"), ComTrans had and continues to have a consistent policy and practice of suffering or permitting employees who worked as drivers ("Drivers"), including Plaintiff, to work well in excess of forty (40) hours per week, without paying them proper overtime compensation as required by federal and state wage and hour laws. Plaintiff seeks to recover unpaid overtime compensation, including interest thereon, statutory penalties, reasonable attorneys' fees and litigation costs on behalf of himself and all similarly situated current and former Drivers who worked for ComTrans. Plaintiff and all similarly situated current and former Drivers who may opt-in pursuant to 29 U.S.C. § 216(b) seek liquidated damages.

4. Plaintiff intends to request the Court to authorize notice to all similarly situated persons informing them of the pendency of the action and their right to "opt-into" this lawsuit pursuant to 29 U.S.C. § 216(b), for the purpose of seeking overtime compensation and liquidated damages under federal law.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter and the parties hereto pursuant to 29 U.S.C. § 216(b), and 28 U.S.C. § 1331.

6. Plaintiff's state law claim is sufficiently related to the FLSA claim that it forms part of the same case or controversy. This Court therefore has supplemental jurisdiction over Plaintiff's claim under the Arizona Wage Statute pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in the State of Arizona within this District. Plaintiff was employed by ComTrans in this District.

### III. PARTIES

8. At all times relevant to the matters alleged herein, Plaintiff Gregory Mark Hanna resided in the State of Arizona in Pinal County.

9. Plaintiff was a full-time, non-exempt employee of ComTrans from on or around April 7, 2014 until on or around March 10, 2016.

10. During Plaintiff's employment with ComTrans, he was paid an hourly wage that ranged between $10 and $12 per hour.

11. For example, for the pay period ending May 3, 2015, Plaintiff was paid $10.51 per hour according to his pay records.

12. Pursuant to 29 U.S.C. § 216(b), attached to and filed with this Complaint as Exhibit A, is the Consent to Become Party Plaintiff, signed by the above-named Representative Plaintiff, Gregory Mark Hanna, opting him into this lawsuit.

13. Defendant ComTrans is an Arizona corporation, authorized to do business in Arizona. ComTrans provides behavioral health and social services transportation to children and adults with special or unique non-emergency circumstances.

14. Defendants L. Neal Thomas and Jane Doe Thomas are husband and wife. They have caused events to take place giving rise to this complaint as to which their marital community is fully liable. Defendant L. Neal Thomas is the President and Chief Executive Officer and Director of ComTrans. As President, Chief Executive Officer, and Director, Defendant L. Neal Thomas sets employment policies for ComTrans, including but not

limited to the amount and manner of compensation for the company's Drivers. Upon information and belief, Defendant L. Neal Thomas exercises control over ComTrans' operations, with authority to hire and fire employees, determine salaries, and control policies affecting significant aspects of the company's day-to-day functions. The FLSA defines an "employer" as any individual who acts directly or indirectly in the interest of the employer in relation to an employee. Defendant L. Neal Thomas is an employer under the FLSA.

15. Defendants Cynthia Cross and John Doe Cross are husband and wife. They have caused events to take place giving rise to this complaint as to which their marital community is liable. Defendant Cynthia Cross is the Vice President of ComTrans. As Vice President, Defendant Cynthia Cross sets employment policies for ComTrans, including but not limited to the amount and manner of compensation for the company's Drivers. Upon information and belief, Defendant Cynthia Cross exercises control over ComTrans' operations, with authority to hire and fire employees, determine salaries, and control policies affecting significant aspects of the company's day-to-day functions. The FLSA defines an "employer" as any individual who acts directly or indirectly in the interest of the employer in relation to an employee. Defendant Cynthia Cross is an employer under the FLSA.

16. ComTrans hires Drivers, including Plaintiff, to provide transportation services for children and adults with behavioral health and other special services needs.

17. Plaintiff and Drivers were employees as defined in 29 U.S.C. § 203(e)(1) and were non-exempt employees under 29 U.S.C. § 213(a)(1) and A.R.S. § 23-350(2).

18. At all relevant times, ComTrans was an employer as defined by 29 U.S.C. § 203(d) and A.R.S. § 350(3).

19. At all relevant times, ComTrans has been engaged in interstate commerce and has been an enterprise whose gross annual volume of sales made or business done is greater than $500,000.

## IV. FACTUAL BACKGROUND

20.   ComTrans is an Arizona corporation in the business of providing behavioral health and social services transportation to children and adults with special or unique non-emergency circumstances.

21.   ComTrans employs more than 400 Drivers whose principal business is to provide transportation services for the company's clients. Drivers provide transportation services for clients of CPS and other behavioral health care services from their home, health care facilities and various locations. Drivers are responsible for maintaining accurate and complete paperwork. Drivers are also responsible for maintenance of ComTrans' equipment, including vehicles, radios, map books, and car seats.

22.   ComTrans requires its Drivers to remain in dress code at all times during their work day, even when they are at base during non-working hours. The uniform includes an assigned ComTrans shirt.

23.   Plaintiff was employed during his tenure for ComTrans as a ComTrans driver from on or around April 7, 2014 until in or around June 2015. Plaintiff was also employed as a case aide from in or around June 2015 until on or around March 10, 2016. Plaintiff's duties as a case aide included driving.

24.   As a non-exempt Driver Plaintiff provided transportation services pursuant to strict ComTrans policies.

25.   Plaintiff provided transportation for women in domestic violence crisis, individuals in detoxification facilities, individuals who are seriously mentally ill, and other individuals with sensitive needs.

26.   ComTrans provided Plaintiff a company-owned vehicle to perform his transportation duties as a Driver, as well as a two-way radio and company cell phone to communicate with dispatch and track his schedule and daily transports.

27.   During a typical day, Plaintiff performed his duties as a a driver from 6 a.m. until 6 p.m. He would have transportation pick-ups scheduled throughout the day.

28.     ComTrans considered Plaintiff's start time as the time he arrived on scene for his first pick-up and his end time is the last drop-off.

29.     ComTrans required Plaintiff to perform duties before the start of his shift and after his shift concluded without recording that time or receiving compensation for it.

30.     Throughout the day, there were numerous hours in which Plaintiff was required to be working but was not allowed to record his time and thus was not compensated for the time he worked.

31.     According to ComTrans policy, Plaintiff was required to drive his company vehicle to pick up his first passenger while in uniform, but he was not paid for this time.

32.     Plaintiff was required to turn in his manifest, which is his daily schedule, to ComTrans' home base located at 2336 East Magnolia Street in Phoenix, Arizona, but he was not compensated for this time.

33.     Plaintiff was required to check with ComTrans Scheduling or Dispatch by radio prior to his first trip and after his last drop off of the last client in many instances, which he was not compensated for.

34.     Plaintiff was also required to prepare his schedule in advance of each day he spent working, but he was not compensated for this time.  ComTrans acknowledges in its written policies that planning a route takes ample time for a driver.  Nevertheless, ComTrans required this work to be completed "prior to [Plaintiff's] start of shift" and he was not compensated for this time.  During this planning time, Plaintiff was required to download his manifest from the transport application, print a hardcopy of the manifest, locate his first stop in the map book and write out the route he was going to use to get there.  These tasks were completed for each transport scheduled on a given day.  All of these tasks were required to be completed before Plaintiff's shift started, and he was not able to record or receive compensation for this time.

35.     Plaintiff was also required to perform paperwork following the completion of his shift after he clocked out, for which he was not compensated.  After the conclusion of

- 6 -

1 each shift, ComTrans required Plaintiff to complete paperwork about his shift and input information about the transports he completed that day into the company's phone application system. ComTrans did not allow Plaintiff to record this time and did not compensate him for this work.

36. ComTrans also did not compensate Plaintiff for hours he spent working during the day that the company called "downtime." ComTrans considered downtime to be the time in between scheduled client pickups throughout Plaintiff's day that is thirty minutes or longer. ComTrans required Plaintiff to wear his work uniform, continue to utilize his work vehicle, and perform work duties by responding to dispatch during this "downtime." ComTrans prohibited Plaintiff from using the company-owned vehicle for personal use, and ComTrans required Plaintiff to remain within a four-mile radius of his last drop-off during downtime so that he could quickly provide services to new transports. ComTrans policy required Plaintiff to clean his vehicle during unpaid downtime as well.

37. ComTrans also required Plaintiff to work off the clock when a passenger canceled a scheduled transport. If Plaintiff was traveling to pick up a client and the client canceled the transport prior to his arrival, ComTrans would not pay Plaintiff for that travel time.

38. ComTrans required Plaintiff to perform mandatory maintenance and cleaning on his company-owned vehicle as part of his regular job duties. ComTrans required Plaintiff to perform this work without recording the time and compensating him for it. For example, ComTrans' written policy required Plaintiff to return to the base to charge his radio or phone battery if it was dead, but he was required to do this mandatory task during a "break" and was not compensated for this time.

39. Plaintiff also worked during lunches but not compensated for this time. ComTrans written policy provides that all Drivers received an automatic thirty-minute deduction for lunch and the company often deducted one hour. The deductions occurred even though Plaintiff was required to perform work duties during lunch, including

- 7 -

responding to calls from dispatch and performing mandatory maintenance and cleaning tasks on his company-owned vehicle.

40. ComTrans required Plaintiff to attend mandatory training during regular hours of employment directly related to his duties as a driver transporting individuals with special health concerns, including training about planning daily routes, filling out transportation logs, customer service, and CPR. According to written ComTrans policy, Plaintiff was not paid for mandatory CPR training or benefits meetings.

41. ComTrans required Plaintiff to attend a four-hour CPR training and additional hours of refresher CPR training as part of his duties as a driver for individuals with serious health conditions. ComTrans' written policy, however, required Plaintiff to attend the CPR training without receiving compensation for that time. ComTrans also required Plaintiff to attend benefits meetings but he was not compensated for this time either.

42. Plaintiff routinely worked in excess of forty (40) hours per week as part of his regular schedule as a Driver, many hours for which he was required to work off the clock.

43. Plaintiff typically worked approximately sixty (60) hours per week during his employment at ComTrans.

44. During a typical day, Plaintiff would start his work for ComTrans at around five in the morning. He would review his daily manifest and plan his route. He would then travel to his first pickup at six in the morning. None of the work he performed prior to his first pick-up was compensated. He then would conduct transports throughout the day, often with downtime ranging from thirty minutes to several hours that was not compensated for despite being required to perform job duties like answering calls from dispatch or having maintenance performed on ComTrans' equipment. He would then drop off his last pick-up around six in the evening.

45. Despite having worked numerous hours of overtime, Plaintiff was not paid proper overtime wages at a rate of one and one half times his regular rate of pay for hours worked over forty in a work week.

46. ComTrans also failed to timely pay Plaintiff all the wages which he was due in violation of the Arizona Wage Statute.

47. Plaintiff's duties, hours and compensation are indicative of the similarly situated Drivers.

48. ComTrans improper policies and compensation practices applied to Plaintiff and all similarly situated Drivers he purports to represent.

49. For example, ComTrans provided its employees, including Plaintiff, with numerous written policies uniformly applicable to all Drivers governing their job duties and the compensation practices applicable to them, including a Driver's Guide and Take Home Policy Contract & Administrative Policy documenting when Drivers' start and end their shifts, their unpaid breaks that they must work through, unpaid trainings they are required to attend, and the requirements like maintenance and cleaning that must be performed during the Drivers' breaks and at their own expense.

50. The ComTrans Driver's Guide indicates that all Drivers are subject to the same duties and job requirements they are required to perform off the clock.

51. The Driver's Guide states that Drivers must remain in a four-mile radius of their most recent pickup and continue to perform job duties in accordance with the ComTrans Standard Conduct and Work Rules even during "downtime" for which the company does not compensate. The Driver's Guide also requires all Drivers to download their manifest on the transport application and plan their schedules "prior to the start of [their] shift."

52. All the Drivers are uniformly subject to the same unlawful compensation practices that Plaintiff was subject to during his employment at ComTrans.

### V. COLLECTIVE ACTION ALLEGATIONS

53. Plaintiff brings his claim under the FLSA, 29 U.S.C. § 201 *et seq.*, as a collective action. Plaintiff brings this action on behalf of himself and others similarly situated, properly defined as:

- 9 -

> All current and former ComTrans employees who worked as drivers for ComTrans during the Liability Period.

54. ComTrans's illegal overtime wage practices were widespread with respect to the proposed class. The failure to pay proper overtime was not the result of random or isolated individual management decisions or practices.

55. ComTrans's overtime wage practices were routine and consistent. Throughout the Liability Period, employees regularly were not paid the proper overtime wage despite working in excess of forty hours per week.

56. Other Drivers performed the same or similar job duties as Plaintiff. Moreover, these Drivers regularly worked more than forty hours in a workweek. Accordingly, the employees victimized by ComTrans's unlawful pattern and practices are similarly situated to Plaintiff in terms of employment and pay provisions.

57. ComTrans's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable policies or practices and do not depend on the personal circumstances of the members of the collective action. Thus, Plaintiff's experience is typical of the experience of the others employed by ComTrans.

58. The specific job titles or precise job requirements of the various members of the collective action do not prevent collective treatment. All ComTrans Drivers, including Plaintiff, regardless of their precise job requirements or rates of pay, are entitled to overtime compensation for hours worked in excess of forty (40). Although the issue of damages may be individual in character, there is no detraction from the common nucleus of facts pertaining to liability.

### **VI. CLASS ACTION ALLEGATIONS**

59. The state law claims under the Arizona Wage Statute are brought as a class action under Federal Rules of Civil Procedure 23(a) and (b)(3). The class is defined in paragraph 2 above.

60. Throughout the Liability Period, ComTrans has employed a large number of Drivers. The class is therefore so numerous that joinder of all members is impracticable. Members of the class can readily be identified from business records maintained by ComTrans.

61. Proof of ComTrans's liability under the Arizona Wage Statute involves factual and legal questions common to the class. Whether Defendants paid Class members the proper wages due in accordance with A.R.S. §§ 23-351, 23-353, 23-355 is a question common to all Class Members.

62. Like Plaintiff, all Class Members worked without being paid the statutorily required overtime wage. Plaintiff's claim is therefore typical of the claims of the class.

63. Plaintiff has no interest antagonistic to those of other Class Members and has retained attorneys who are knowledgeable in wage and hour and class action litigation. The interests of Class Members are therefore fairly and adequately protected.

64. This action is maintainable as a class action under Rule 23(b)(3) because questions of law or fact common to the Class predominate over any questions affecting only individual members.

65. In addition, a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The Arizona Wage Statute recognizes that employees who are denied their wages often lack the ability to enforce their rights against employers with far superior resources. Further, because the damages suffered by individual class members may be relatively small, the expense and burden of individual litigation makes it difficult for members of the class to individually redress the wrongs done to them.

66. Plaintiff's Arizona Wage Statute claim is easily managed as a class action. The issue of liability is common to all Class Members. Although the amount of damages may differ by individual, they are objectively ascertainable and can be easily calculated.

## VII. COUNT ONE

**(Failure to Properly Pay Overtime Wages - FLSA - 29 U.S.C. § 207)**

- 11 -

67. Plaintiff incorporates by reference all of the above allegations as though fully set forth herein.

68. Plaintiff was a non-exempt employee entitled to the statutorily mandated overtime pay according to the FLSA.

69. ComTrans was an employer pursuant to 29 U.S.C. § 203(d).

70. ComTrans failed to comply with 29 U.S.C. § 207 because Plaintiff worked for ComTrans in excess of forty hours per week, but ComTrans failed to pay Plaintiff for those excess hours at the statutorily required rate of one and one-half times Plaintiff's regular rate of pay as required by the FLSA.

71. ComTrans's failure to pay overtime to Plaintiff was willful. ComTrans knew Plaintiff was working overtime but failed to properly pay overtime wages. ComTrans had no reason to believe its failure to pay overtime was not a violation of the FLSA.

72. Plaintiff is entitled to statutory remedies provided pursuant to 29 U.S.C. § 216(b), including but not limited to liquidated damages and attorneys' fees.

### VIII. COUNT TWO

**(Failure to Pay Timely Wages Due - Arizona Wage Statute)**

73. Plaintiff incorporates by reference all of the above allegations as though fully set forth herein.

74. ComTrans was aware of its obligation to pay timely wages pursuant to A.R.S. § 23-351.

75. ComTrans was aware that, under A.R.S. §§ 23-351-353, it was obligated to pay all wages due to Plaintiff.

76. ComTrans failed to timely pay Plaintiff wages he was due without a good faith basis for withholding the wages.

77. ComTrans has willfully failed and refused to timely pay wages due to Plaintiff. As a result of ComTrans's unlawful acts, Plaintiff is entitled to the statutory remedies provided pursuant to A.R.S. § 23-355.

**IX. REQUESTED RELIEF**

WHEREFORE, the Plaintiff, individually and on behalf of all others similarly situated, prays:

A. For the Court to order ComTrans to file with this Court and furnish to Plaintiffs' counsel a list of the names and addresses of all current and former Drivers for the past three years;

B. For the Court to authorize Plaintiff's counsel to issue notice at the earliest possible time to all current and former Drivers for the past three years immediately preceding this action, informing them that this action has been filed and the nature of the action, and of their right to opt into this lawsuit if they worked hours in excess of forty (40) hours in a week during the Liability Period, but were not paid overtime as required by the FLSA;

C. For the Court to declare and find that ComTrans committed one or more of the following acts:

   i. violated overtime provisions of the FLSA, 29 U.S.C. § 207, by failing to pay overtime wages to Plaintiff and persons similarly situated who opt into this action;

   ii. willfully violated overtime provisions of the FLSA, 29 U.S.C. § 207;

   iii. willfully violated the Arizona Wage Statute by failing to timely pay all wages due to Plaintiff;

D. For the Court to award compensatory damages, including liquidated damages pursuant to 29 U.S.C. § 216(b) and/or treble damages pursuant to A.R.S. § 23-355, to be determined at trial;

E. For the Court to award interest on all overtime compensation due accruing from the date such amounts were due;

F. For the Court to award such other monetary, injunctive, equitable, and declaratory relief as the Court deems just and proper;

G. For the Court to award restitution;

H. For the Court to award Plaintiff's reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b);

I. For the Court to award pre- and post-judgment interest;

J. For the Court to award Plaintiffs' resulting consequential damages, in an amount to be proven at trial; and

K. For such other relief as the Court deems just and proper.

## X. DEMAND FOR JURY TRIAL

78. Plaintiff, on behalf of himself and all others similarly-situated, hereby demands trial of his claims by jury to the extent authorized by law.

DATED: April 29, 2016.

BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.

  /s/ Ty D. Frankel
Ty D. Frankel
2325 E. Camelback Road, Suite 300
Phoenix, Arizona  85016
Telephone:  602-274-1100
Facsimile:   602-798-5860

BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C.
Patricia N. Syverson
600 W. Broadway, Suite 900
San Diego, California 92101

Attorneys for Plaintiff