**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Gregory Mark Hanna,

Plaintiff,

v.

ComTrans Incorporated, et al.,

Defendants.

No. CV-16-01282-PHX-DLR

**ORDER**

Plaintiff has filed a motion for conditional class certification, (Doc. 27), and a motion to strike, (Doc. 35). Defendants have filed a motion for reconsideration. (Doc. 32.) The motions are fully briefed, and neither party requested oral argument. For the reasons below, all three motions are denied.

**BACKGROUND**

On April 29, 2016, Plaintiff Gregory Hanna filed a collective action under the Fair Labor Standards Act (FLSA) against Defendants ComTrans, Inc.; L. Neal Thomas, President and CEO of ComTrans; and Cynthia Cross, Vice President of ComTrans. (Doc. 1.) ComTrans "is in the business of providing behavioral health and social services transportation to children and adults with special or unique non-emergency circumstances." (*Id.*, ¶ 20.) It employs over 400 drivers "whose principal business is to provide transportation services for the company's clients. (*Id.*, ¶ 21.) Hanna, a former ComTrans driver, alleges that ComTrans failed to pay him overtime wages in violation of

the FSLA. (*Id.*, ¶ 1.)

ComTrans utilizes different classes of drivers to accomplish different tasks. Drivers are classified as either Crisis Drivers or Routine Drivers. (Doc. 34-1 at 3.) Routine Drivers are further classified into several subcategories: Case Aide/Visitation, DCS Transportation, Schools/Special Needs, Behavioral Health Children, Behavioral Health Adults, Dialysis/Medical, and Friendship. (*Id.*) Hanna asserts that he worked as a Routine Driver and Case Aide. (Doc. 1, ¶ 23.)

As a Routine Driver, Hanna operated a ComTrans-owned vehicle to provide transportation services for clients "from their home, health care facilities, and various other locations." (Doc. 27-3 at 3.) Typically, Hanna worked from 6 a.m. to 6 p.m. driving to scheduled transportation "pick-ups" throughout the day, during which he was required to work numerous hours "but was not allowed to record [his] time" and receive pay. (*Id.*) For example, he alleges that he was "required to prepare [his] schedule in advance of each day," which included downloading the manifest, printing it, locating the first stop, and writing out the route he "was going to take to reach [his] passengers." (*Id.*) In addition, he was required to complete paperwork after his shift. (*Id.*)

Hanna also asserts that he did not receive compensation for "downtime, which was time longer than thirty minutes in between passenger pick-ups." (*Id.*) During this time, he had to wear his ComTrans uniform and "respond to calls from ComTrans dispatch." (*Id.*) Hanna did not receive compensation for cancelled pick-ups, turning in his weekly manifest to the ComTrans main office, or performing mandatory maintenance and cleaning his ComTrans vehicle. (*Id.* at 4.) He further asserts that ComTrans "automatically deducted thirty minutes from [his] work time for lunch, even though [he] was required to respond to dispatch, perform mandatory maintenance on [his] vehicle, and perform other work duties during this time." (*Id.*) He was also required to attend Mandatory ComTrans training for which he did not receive compensation. (*Id.*) Overall, he asserts he worked approximately sixty hours per week. (*Id.*)

Hanna alleges that ComTrans "issued extensive written policies and procedures

for its employees who worked as routine drivers to follow." (*Id.*) He claims all Routine Drivers throughout Arizona "had the same job duties, were subject to the same written rules and policies as [he] was, and were compensated in the same manner[.]" (*Id.* at 5.) Hanna alleges that his wife also worked as a Routine Driver for ComTrans and that he "observed that all of the policies applicable to me also applied to her[.]" (*Id.* at 6.)

Hanna now seeks conditional certification of the following class: "All current and former ComTrans employees who worked as routine drivers for ComTrans from April 29, 2013 to the present." (Doc. 27-1 at 3.) He seeks unpaid overtime compensation and a declaration that ComTrans violated the FLSA. (Doc. 1 at 13.)

**PRELIMINARY MOTIONS**

On August 12, 2016, the Court denied Defendants' motion for extension of time to respond to Hanna's motion for conditional class certification, which was filed on July 18, 2016. (Doc. 31.) Defendants then moved for reconsideration of the Court's order, (Doc. 32), and subsequently filed their response on August 26, 2016, three weeks past the original deadline, (Doc. 34). Thereafter, Hanna moved to strike the response as untimely. (Doc. 35.)

The Court denies Defendants' motion for reconsideration and denies Hanna's motion to strike Defendants' response. Though the response is untimely, a "motion to strike is a drastic remedy which is disfavored by the courts and infrequently granted." *Vesecky v. Matthews (Mill Towne Center) Real Estate, LLC*, No. CV-09-1741-PHX-JAT, 2010 WL 749636, at *1 (D. Ariz. March 2, 2010) (internal quotations omitted). The Court prefers resolving fully briefed motions when possible, and Hanna has not suffered any prejudice resulting from Defendants' untimely response. In the future, however, Defendants must comply with deadlines or risk the Court striking future briefs or pleadings. As such, both motions are denied, and the Court will consider Defendants' response.

**MOTION FOR CLASS CERTIFICATION**

The FLSA prohibits covered employers from employing any employees "for a

workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). "Any employer who violates the provisions of . . . section 207 . . . shall be liable to the employee or employees affected in the amount of . . . their unpaid overtime compensation[.]" *Id.* § 216(b). A collective action to recover these damages may be brought "against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." *Id.* Employees not named in the complaint who wish to join the action must give their consent in writing to the court in which the action is brought. *Id.*

"Section 216(b) does not define 'similarly situated,' and the Ninth Circuit has not construed the term." *Colson v. Avnet, Inc.*, 687 F. Supp. 2d 914, 925 (D. Ariz. 2010). Although courts in other circuits have taken different approaches in this determination, "district courts within the Ninth Circuit generally follow the two-tiered or two-step approach for making a collective action determination." *Id.*; *see also Villarreal v. Caremark LLC*, No. Cv-14-00652-PHX-DJH, 2014 WL 4247730, at *3 (D. Ariz. Aug. 21, 2014) ("The majority of courts, including those within the District of Arizona, have adopted the two-tiered approach in deciding whether to grant FLSA collection action status." (internal quotations and alterations omitted)). Under this approach,

> the court determines, on an ad hoc case-by-case basis, whether plaintiffs are similarly situated. This requires the court to first make an initial 'notice stage' determination of whether plaintiffs are similarly situated. At this first stage, the court requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan. If a plaintiff can survive this hurdle, the district court will conditionally certify the proposed class and the lawsuit will proceed to a period of notification, which will permit the potential class members to opt-into the lawsuit. Once the notification period ends, the Court moves on to the second step of the certification process. At the second step, in response to a motion to decertify the class filed by the defendant, the court makes yet another determination whether the proposed class members are similarly situated; this time, however, the court utilizes a much stricter standard to

scrutinize the nature of the claims.

*Colson*, 687 F. Supp. 2d at 925 (internal citations and some quotations omitted).

Although the plaintiffs' "burden is light," conditional certification is "by no means automatic." *Id.* "All that need be shown by the plaintiff is that some identifiable factual or legal nexus binds together the various claims of the class members in a way that hearing the claims together promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA." *Wertheim v. State of Arizona*, No. CIV 92-453 PHX RCB, 1993 WL 603552, at *1 (D. Ariz. Sept. 30, 1993). The allegations need not be "strong [n]or conclusive;" the plaintiff need only show "that there is some factual nexus which binds the named plaintiffs and the potential class members together as victims of a particular alleged policy or practice." *Colson*, 687 F. Supp. 2d at 926. "Plaintiffs need only show that their positions are similar, not identical, to the positions held by the putative class members." *Juvera v. Salcido*, 294 F.R.D. 516, 520 (D. Ariz. 2013) (internal quotations omitted). In other words, "[t]he court must only be satisfied that a reasonable basis exists for the plaintiffs' claims or class wide injury." *Bollinger v. Residential Capital, LLC*, 761 F. Supp. 2d 1114, 1119 (W.D. Wash. 2011) (internal quotations marks omitted).

Ultimately, whether a collective action should be conditionally certified is within the discretion of the court. *Colson*, 687 F. Supp. 2d at 925. The court should not review the underlying merits of the action, nor should it "resolve factual disputes . . . at the preliminary certification stage of an FLSA collective action." *Id.* at 926. "The court's determination at this first step is based primarily on the pleadings and any affidavits submitted by the parties." *Kelsey v. Entm't U.S.A. Inc.*, 67 F. Supp. 3d 1061, 1065 (D. Ariz. 2014) (internal quotations omitted).

**I. Similarly Situated**

In support of his motion, Hanna submitted his declaration and copies of the following documents: Routine Driver Job Description, ComTrans Consequence Management Program – Drivers, Defensive Driving Classroom Training, Dress Code

Policy, ComTrans Routine Driver's Guide, and Downtime Policy Acknowledgement. (Doc. 27-3.) He argues that he is similarly situated to other potential class members because ComTrans' employment practices are uniformly applied to all of the Routine Drivers. (Doc. 27 at 9.) He further claims that all Routine Drivers "performed the same duties, under the same conditions, and under the same practice of requiring the Drivers to perform work off the clock." (*Id.*)

Defendants argue that the class should not be conditionally certified because Hanna fails to provide sufficient evidence to demonstrate that he is similarly situated to other putative class members. They assert that Hanna fails to provide declarations from other ComTrans drivers or deposition testimony from ComTrans representatives. Instead, Hanna relies solely on his declaration, which Defendants argue is insufficient. The Court agrees.

The evidence presented by Hanna is similar to that proffered in *Colson*, 687 F. Supp. 2d at 914. There, the plaintiff brought suit under the FLSA claiming that her former employer, Avnet, Inc., failed to pay overtime wages to all of its Sales & Marketing Representatives (SMRs) across the country. *Id.* at 917. In support of her motion for conditional collective action certification, she provided her own declaration, the declaration of a former Avnet employee, a declaration from her attorney, a copy of a SMR job description, and correspondence between her attorney and Avnet's in-house counsel. *Id.* at 926.

The court denied the motion for two reasons. First, the court noted that "the mere classification of a group of employees . . . as exempt under the FLSA is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practices that renders all putative class members as 'similarly situated' for § 216(b) purposes." *Id.* As such, the plaintiff could not rely solely on the allegation that all SMRs were misclassified as exempt under the FLSA to satisfy § 216(b).

Second, the court found that the plaintiff failed to meet her evidentiary burden to demonstrate that "all SMRs performed similar tasks and were, as a discernable class,

potentially misclassified as employees exempt from over-time pay requirements." *Id.* at 928. The plaintiff's declaration revealed that she had "minimal contact with SMR employees from other states" and referenced "discussions . . . with [unidentified] co-workers, unspecified company communications, and undocumented interactions with other SMR employees and Avnet clients." *Id.* at 929 (internal quotation marks omitted). In addition, the court concluded that the declaration of the former Avnet employee had "even less evidentiary value" given that he did not work as a SMR and was not a member of the putative class, and the declaration from the plaintiff's attorney had "no evidentiary value." *Id.* Further, the job posting noted that it was intended to describe the general nature of work and was not an exhaustive list of all responsibilities of a SMR. *Id.* Consequently, the plaintiff failed to demonstrate that she was similarly situated to all SMRs within the proposed class. *Id.* at 929-30.

Here, Hanna's declaration explains his job duties as a ComTrans Routine Driver and asserts that he was required to work hours for which he received no compensation. But to maintain a collective action, he must do more than demonstrate that he alone was subject to an unlawful policy or practice—he must show that other potential class members are also similarly situated. *See* 29 U.S.C. § 216(b). Like the plaintiff in *Colson*, his allegations regarding other ComTrans drivers are vague and conclusory. He claims that he "knows" other ComTrans drivers were also required to abide by ComTrans policies because he "observed other drivers being given copies of the same documents at trainings[.]" (Doc. 27-3 at 5.) He also "observed other routine drivers working and had conversations with them about the amount of hours they worked." (*Id.*) Hanna fails, however, to identify a single ComTrans driver to corroborate this information, and these undocumented conversations with unidentified employees are insufficient to meet his burden. Like *Colson*, the Court finds that, "[w]hile [Hanna's] declaration has some value in describing [his] own experience, it has no probative value in establishing that [he], along with other [routine drivers], 'were together the victims of a single decision, policy, or plan.'" *Colson*, 687 F. Supp. 2d at 928-29 (quoting *Thiessen v. Gen. Elec. Capital*

*Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001)).

Furthermore, the documents attached to Hanna's declaration do little to bolster his position. Like the job description in *Colson*, the Routine Driver Job Description generally describes the duties of a ComTrans routine driver and notes that "responsibilities of this position" are not "limited to" the duties specified. (Doc. 27-3 at 9.) In addition, other than the Downtime Policy Acknowledgement, the remaining documents simply describe general policies applicable to all ComTrans drivers, such as dress code, defensive driving, and training. And although the Downtime Policy Acknowledgement constitutes some evidence regarding a single decision, policy, or plan applied to all routine drivers, Hanna fails to come forward with any other ComTrans driver that signed the form and complied with its provisions.

Because the burden for certification is light, in close cases courts will certify a proposed class if the plaintiff at least provides a corroborating declaration from another employee. *See Shaia v. Harvest Mgmt. Sub LLC*, 306 F.R.D. 268, 275 (N.D. Cal. 2015) (certifying the class notwithstanding "thin" evidence because plaintiff submitted a corroborating declaration from another employee of defendant, thus demonstrating that class members are similarly situated). But when faced with scant evidence absent a corroborating declaration from a potential class member, courts are unable to determine if a plaintiff is similarly situated to potential class members, and therefore decline to certify such classes. *See Colson*, 687 F. Supp. 2d at 930; *Guess v. U.S. Bancorp*, No. 06-07535-JF, 2008 WL 544475, at *4 (N.D. Cal. Feb. 26, 2008) (denying certification where plaintiff "failed to offer evidence form any potential class member (other than himself) suggesting that persons employed in the various sales positions he identified are similarly situated"). Here, the Court is faced with thin evidence absent a corroborating declaration from a potential class member. Consequently, Hanna has failed to demonstrate that he is similarly situated to other potential class members, and the motion for conditional collective action certification is denied. This case will proceed as a single action brought by Hanna against ComTrans for violations of the FLSA.

**IT IS ORDERED** that Plaintiff's motion for conditional FLSA class certification, (Doc. 27), Defendants' motion for reconsideration, (Doc. 32), and Plaintiff's motion to strike, (Doc. 35), are **DENIED**.

Dated this 28th day of October, 2016.

Douglas L. Rayes
United States District Judge